# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CRIMINAL ACTION NO. 1:20-CR-00022-GNS-HBB-1

**UNITED STATES OF AMERICA**                                         **PLAINTIFF**

**VS.**

**JASON ZABEL**                                                                 **DEFENDANT**

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

### BACKGROUND

Before the Court is the Defendant Jason Zabel's ("Zabel") motion to suppress evidence (DN 20). The United States responded in opposition (DN 21). Following a telephone conference between the undersigned and counsel for the parties (DN 26), Zabel replied (DN 27). Also included in the proceedings is a sealed body camera recording of the events (DN 24 SEALED). The matter is ripe for adjudication.[1]

No evidentiary hearing was conducted, as "the parties agree that once the Court is provided the body camera recording …, there is no disagreement on the facts, and the motion can be decided without a hearing" (DN 21 pp. 1). The undersigned confirmed this agreement during the aforementioned telephone conference (DN 26)

---

1 The District Judge referred this motion to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and FED. R. CRIM. P. 59(b)(1), for any necessary hearings and for findings of fact, conclusions of law, and recommendation (DN 23).

## FACTS

On August 4, 2020, United States Park Rangers received a report from a female victim alleging the following:

> while she and Jason Zabel were in Mammoth Cave, Zabel touched her buttocks over her clothing, forced her to the corner of an elevator, attempted to kiss her, and exposed his penis to her. She stated this conduct was unwanted.

(DN 1 PageID 1). When asked about the incident, "Zabel stated that he touched her buttocks, stood close to her in the elevator, and exposed his penis, which he stated was at least partially erect" (Id.).

Zabel was charged in an indictment by a Grand Jury sitting in Bowling Green (DN 8). The sole count of the indictment charges him with Abusive Sexual Contact, in violation of 18 U.S.C. § 2244(b) (Id.).

## ZABEL'S MOTION TO SUPPRESS AND REPLY

Zabel advances a claim that "law enforcement conducted a custodial interrogation of Mr. Zabel without first completely advising him of (and Mr. Zabel knowingly and intelligently waiving) his rights as set forth in *Miranda v. Arizona*, 384 U.S. 436 (1966)" (DN 20 PageID 43-44). The parties do not contest whether Zabel was interrogated during his discussions with the Park Rangers, as the parties' sole focus is whether Zabel was in custody prior to his incriminating statements (DN 20 PageID 44; DN 21 pp. 3-5; DN 27 pp. 2-5).

"While [Zabel] was told that he did not have to talk to [the Park Rangers] and that he was not under arrest, he was not advised of his right to counsel, and the fact that anything he said or uttered could be used against him in a court of law" (DN 20 PageID 44). Circumstances surrounding the conversation, Plaintiff argues, clearly show Zabel reasonably believed he was not free to leave. These circumstances include: (1) Zabel was directed to a specific location away

2

from his co-workers to conduct the questioning; (2) the Park Rangers repeatedly denied or ignored Zabel's requests to use the restroom; (3) Zabel "was questioned for nearly a half an hour before being led out of the cave by the officers, and immediately placed in handcuffs upon his exit from the cave[;]" and (4) Zabel was questioned underground, far from the surface, and confined in a narrow passageway with the two Rangers (DN 20 PageID 44; DN 27 pp. 2-5).

## UNITED STATES' RESPONSE TO MOTION

The United States responds to the motion by asserting that "the factors support a finding that Zabel was not in custody" (DN 21 pp. 4). To support this claim, the United States recounts: (1) "[t]he interview took place at Zabel's workplace and lasted only fifteen minutes[; … (2)] [t]hough Zabel's two requests to go to the bathroom went unheeded, Zabel was able to go to the bathroom before being formally arrested[; … and (3)] [t]he Rangers repeatedly told Zabel that he did not need to answer questions, stating, 'You're not under arrest. You're free to go' and 'You don't have to talk to us. This is your option. You're not under arrest. This is clearly a free interview—your option to talk to us'" (Id. at pp. 4-5).

## DISCUSSION

The Supreme Court has held that when a suspect "is taken into custody or otherwise deprived his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Miranda v. Arizona, 384 U.S. 436, 478 (1966). To protect the suspect's privilege against self-incrimination, the authorities must warn the suspect prior to any questioning "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Id. at 478-79. After the Miranda rights have been given the suspect may voluntarily, knowingly,

3

and intelligently waive those rights and agree to answer questions. Id. at 444, 479. However, the authorities cannot question the suspect if he indicates that he wishes to consult with an attorney before speaking or that he does not wish to be interrogated. Id. at 444.

The objective test, for determining if an individual is in custody, is a totality of circumstances review to determine "how a *reasonable* man in the suspect's position would have understood his situation." United States v. Phillip, 948 F.2d 241, 247 (6th Cir. 1991) (citing Berkemer v. McCarty, 468 U.S. 420, 442 (1985)). Thus, the test does not turn on the subjective views of the person being questioned or the interrogating officer. Stansbury v. California, 511 U.S. 318, 323 (1994).

As the Sixth Circuit has noted:

> Thus, in order for Miranda to apply, the suspect must either be actually taken into custody or the restraint on his freedom must rise to the level associated with a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125 . . . (1983). The Supreme Court has distinguished between "custodial interrogation" and the mere questioning of a suspect in a "coercive environment":

> [A] noncustodial situation is not converted to one in which Miranda applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question.

United States v. Salvo, 133 F.3d 943, 948 (6th Cir. 1998) (citing Oregon v. Mathiason, 429 U.S. 492, 495 (1977)); *see also* United States v. Swanson, 341 F.3d 524, 529 (6th Cir. 2003); Coomer v. Yukins, 533 F.3d 477 (6th Cir. 2008); United States v. Knox, 839 F.2d 285, 291 (6th Cir. 1988).

The United States cites <u>United States v. Hinojosa</u>, 606 F.3d 875, 883 (6th Cir. 2010), in quoting the following factors regarding custody: "(1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions[]" (DN 21 pp. 4). In contrast, Zabel cites <u>United States v. Lopez-Arias</u>, 344 F.3d 623, 627 (6th Cir. 2003), to note other relevant factors: "1) the transportation of the detainee to another location; 2) significant restraints on the detainee's freedom of movement; and 3) the use of weapons or bodily force are among the considerations" (DN 27 pp. 2).

Turning to the United States' factors, the interrogation "occurred literally in the bowels of the earth" (DN 27 pp. 2). Zabel was questioned in confined tunnels of Mammoth Cave, but this was also Zabel's workplace, an area he is extremely familiar with. As to the length and manner, the Rangers did not raise their voices or explicitly attempt to compel answers from Zabel. Instead, the Rangers stood on one side of the tunnel, with Zabel at the other side, several feet apart, and the Rangers conducted the interrogation for approximately fifteen to twenty minutes. The Rangers' questioning was pointed and direct, but the questioning was not hostile. As to any restraints on Zabel's freedom of movement, Zabel was not handcuffed during the conversation, Zabel was repeatedly told that he did not have to speak to the Rangers and that he did not have any warrants, and Zabel was told he was free to leave. However, to Zabel's favor, Zabel had asked several times to use the restroom, but those requests were denied or ignored by the Rangers. Finally, as just mentioned, Zabel was told, at least twice, he was not obligated to answer any questions, nor did he have any warrants that would require him, at that time, to be compelled to follow the Rangers. The Rangers also explicitly added, "You don't have to talk to us. This is your option. You're not under arrest. This is clearly a free interview—your option to talk to us."

Now, looking at the factors cited by Zabel, Zabel was asked to step away from his coworkers and walk with the Rangers to discuss a "serious accusation" against him. Due to the nature of the allegations, it is logical to presume that Zabel, regardless of being asked to continue down the tunnels, would have wanted to create some distance from his coworkers, so they may not hear the conversation. Even then, the conversation still took place within Zabel's workplace. As to "significant restraints" on Zabel's freedom of movement, this criterion was discussed during the United States' factors, specifically with Zabel being told he had no warrants and was free to leave. Finally, there were no weapons or bodily force used during the initial confrontation with Zabel, nor were they used during the course of the interrogation.

Therefore, based on the totality of the circumstances, Zabel was not in custody during the course of the interrogation with the Park Rangers. As such, the Miranda warnings were not required before Zabel made any incriminating statements. Consequently, Zabel's admission during the interrogation should not be suppressed.

At the conclusion of the conversation, the Rangers pat down Zabel, inform him that they will be placing him under arrest, and they inform Zabel that he must follow them to the surface. At this point, Zabel is placed into a restraint on his freedom akin to a formal arrest. *See* California v. Beheler, 463 U.S. 1121, 1125 (1983). Therefore, any interrogation would require the Miranda warnings before any incriminating statement would be admissible. The body camera video makes any statements during the walk to the surface intelligible. However, no Miranda warnings were provided before the walk to the surface. Therefore, any incriminating statements during the walk to the surface should be excluded.

RECOMMENDATION

**WHEREFORE** the undersigned **RECOMMENDS** that Defendant's motion to suppress (DN 20) be **GRANTED IN PART** and **DENIED IN PART**. Statements obtained prior to Zabel's detention and pat-down should not be subject to suppression. Any statements Defendant made while in custody, but before being advised of his Miranda rights, should be suppressed.

H. Brent Brennenstuhl
United States Magistrate Judge

January 20, 2021

NOTICE

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and Fed. R. Crim. P. 59(b)(1), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. Fed. R. Crim. P. 59(b)(2). "Failure to object in accordance with this rule waives a party's right to review." Fed. R. Crim. P. 59(b)(2).

H. Brent Brennenstuhl
United States Magistrate Judge

January 20, 2021

Copies:    Counsel of Record

7